Thomas James WHITE HAWK,
Appellant,

v.

Herman SOLEM, Warden, South Dakota
State Penitentiary, Appellee.

No. 82–1248.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1982.

Decided Dec. 3, 1982.

Certiorari Denied March 28, 1983.
See 103 S.Ct. 1505.

Mark V. Meierhenry, Atty. Gen., Douglas E. Kludt, Asst. Atty. Gen., Pierre, S.D., for appellee.

Lon J. Kouri, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for appellant.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Thomas James White Hawk appeals from the District Court's[1] order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1976). He alleges that he is being held in violation of the Constitution because a) his guilty plea was motivated by a coerced confession taken in violation of the Fifth, Sixth, and Fourteenth Amendments; b) he received ineffective assistance of counsel; c) his guilty plea was not voluntarily or intelligently made; and d) the Court failed to empanel a jury to determine whether he was competent to stand trial.[2] We affirm.

In March 1967, White Hawk was arrested and charged with premeditated murder and felony murder. While confined in the county jail he was interrogated by police. He admitted to having participated in the crime. He was arraigned on two charges of felony murder and one charge of premeditated murder to which he pleaded not guilty and not guilty by reason of insanity. Counsel moved to suppress the post-arrest statements but the motion was denied. Thereafter, on November 13, 1967, White Hawk pleaded guilty to premeditated murder. A pre-sentence hearing was held on November 16, 1967, at which time the court reviewed evidence concerning his competence to stand trial. It found White Hawk competent to stand trial and on January 15, 1968, sentenced him to death. He sought relief by way of state post-conviction proceedings in 1969; it was denied. He appealed to the South Dakota Supreme Court, but prior to a ruling the Governor commuted his sentence from death to life imprisonment. He thereafter sought and obtained a dismissal of his pending state post-conviction appeal. White Hawk later filed a federal habeas corpus petition, and its merits were argued before the District Court on December 21, 1981. Relief was denied.

I.

White Hawk attacks the guilty plea on the ground that it was motivated by a coerced confession. Law enforcement officials allegedly interrogated White Hawk soon after placing him in custody, without informing him of his right to remain silent and his right to the presence of an attorney. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contends that they continued to question him even after he requested counsel. Once White Hawk requested counsel, further interrogation had to cease, unless and until he himself initiated further communication. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981);

---

1. The Hon. John B. Jones, United States District Judge for the District of South Dakota.

2. White Hawk also contends that the trial court's finding of competence to stand trial was based on insubstantial evidence. This argument is wholly without merit.

The state argues that White Hawk waived his right to seek habeas corpus relief because of his failure to complete his appeal from the denial of his state post-conviction petition. We agree with the District Court that under *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), White Hawk's access to federal habeas is not barred. Since on the merits we are holding against petitioner's claims, we forego extended discussion of the procedural-bypass question.

*Stumes v. Solem,* 671 F.2d 1150 (8th Cir. 1982), *petition for cert. filed,* 50 U.S.L. Week 3949 (U.S. April 30, 1982) (No. 81–2149). We need not, however, address these allegations because "a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney." *Mc-Mann v. Richardson,* 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).[3]

■ In order to prove ineffective assistance of counsel, White Hawk must show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would have exercised under similar circumstances, and that he was prejudiced by that failure, or, to put it another way, that the behavior of counsel fell measurably below that which might be expected from an ordinary fallible lawyer. *Walker v. Solem,* 687 F.2d 1235, 1236–37 (8th Cir.1982); *United States v. DeCoster,* 624 F.2d 196, 206 (D.C.Cir.1979) (en banc) (plurality opinion). There is a presumption that counsel has rendered effective assistance.

■ We believe that White Hawk received effective assistance of counsel. Contrary to defendant's allegations, the record shows that counsel pursued defenses to premeditated murder. He submitted the defendant to psychiatric examinations and pursued the insanity defense in court. Counsel, moreover, explained the elements of premeditated murder to White Hawk, the degrees of murder, and the possibility of receiving the death penalty if he pleaded guilty to premeditated murder (P.C. 313–

14).[4] Counsel attempted to suppress the allegedly coerced confession, but the motion to suppress was denied. White Hawk has proffered no evidence rebutting the presumption of counsel's competence. He has the burden of "demonstrat[ing] gross error on the part of counsel," *McMann v. Richardson, supra,* 397 U.S. at 772, 90 S.Ct. at 1449, and he has not done so.

II.

■ For a guilty plea to be voluntary and entered in accordance with due process, the defendant must have been informed of the nature and elements of the charges against him. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). This requirement has been satisfied. Trial counsel testified at the post-conviction hearing that prior to the entry of the guilty plea he had explained to petitioner the elements of premeditation. He reviewed the evidence that would support each element and indicated what defenses were available.

Q. Did you explain the element of premeditation to Tom White Hawk while he was in jail there at Vermillion prior to his plea?

A. Yes. I went through the degrees of murder with him, and what they amounted to.

Q. Did you tell him what the penalty was for felony murder and premeditated murder?

A. Yes.

Q. Did you explain to him the legal meaning of premeditated murder or premeditated design?

A. As set forth in the statute, yes.

---

**3.** White Hawk attempts to distinguish *McMann* from the case at hand, noting that in *McMann* counsel actually advised the defendant to plead guilty whereas White Hawk made the decision on his own. White Hawk's guilty plea, the argument goes, was therefore still tainted by the failure to suppress his inculpatory statements. We reject this argument. As long as effective assistance of counsel has been provided, it does not matter whether the defendant ultimately pleads guilty on his own or upon the advice or urging of his lawyer. See *Jones v.*

*Estelle,* 584 F.2d 687, 690 (5th Cir.1978). *Compare McMann, supra, with Pennsylvania ex rel. Herman v. Claudy,* 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956). It is, after all, the defendant's prerogative to plead guilty or not, as he chooses. Our inquiry must focus on whether there has been effective assistance of counsel.

**4.** "P.C." refers to the transcript of the post-conviction hearing in the state courts.

Q. Did you tell him about any of the facts in this case or facts that you were confronted with which would indicate that there was premeditated design?

A. Yes, from the facts available, yes.

Q. But you too felt that there were certain facts that may rebut this premeditation?

A. Surely.

Q. So you didn't give him the impression that it was clearcut premeditated design involved?

A. No.

(P.C. 313–14). Counsel also went over with White Hawk the statutes governing felony murder and premeditated murder. This was conceded by the defendant.

[White Hawk] Well, see, [counsel] came down to my cell one day and he had a law book, a statute book with the citations for felony murder, premeditated murder, and he showed me that, and that's when he discussed that with me.

Q. Did he show you what the statute provided as punishment for murder?

[White Hawk] Yes, he did. Well, he did not show me the exact place in the book. He just told me what the consequences could be.

(P.C. 342). White Hawk also conceded that he understood he could get the death sentence for pleading guilty to premeditated murder (P.C. 347). Immediately prior to his entering a guilty plea, the information was read out loud before White Hawk. It stated the following:

Thomas James White Hawk ... did then and there commit the crime of murder; that is to say that at said time and place the said defendant did wilfully, unlawfully and feloniously, with malice aforethought, and without authority of the law and with premeditated design and without justifiable or excusable cause perpetrate and effect the death .... (T. 109).[5]

The trial judge expressly stated the elements of premeditated murder and the consequence of entering a guilty plea. He then asked White Hawk whether he understood. White Hawk said that he did (T. 105–06).

■ Defendant attacks the plea on the basis of his statements during allocution. White Hawk said that the murder was accidental and suggested that at the time he was confused, intoxicated, and insane (T. 202–04). These comments were certainly inconsistent with his guilty plea to having willfully committed murder, with malice aforethought and without justifiable or excusable cause. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), however, is directly in point. In that case the defendant pleaded guilty to second degree murder while at the same time proclaiming his innocence. The Court observed that the standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31, 91 S.Ct. at 164. For a guilty plea to be valid, so far as the Due Process Clause is concerned, it is not necessary that the defendant make an express admission of guilt. "An individual accused of crime may volun-

---

5. This reference is to the transcript of the plea and sentencing proceedings in the state trial court.

White Hawk contends that the trial court failed to establish a sufficient factual basis for accepting a plea on the record, in violation of Fed.R.Crim.P. 11(f). That rule provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Rule 11(f), however, applies to federal courts and not state courts. It is not a constitutional principle as White Hawk sug-

gests. *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *Wade v. Coiner,* 468 F.2d 1059, 1060 (4th Cir.1972); *Freeman v. Page,* 443 F.2d 493, 497 (10th Cir.), *cert. denied,* 404 U.S. 1001, 92 S.Ct. 569, 30 L.Ed.2d 554 (1971). The important point, so far as due process is concerned, is that a defendant understands the nature of the accusation and the possible consequences of his plea. The particular procedure by which that substantive right is guaranteed is within the discretion of the several states.

tarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 167. As long as there is in fact a strong factual basis supporting a guilty plea, it is valid even if the defendant protests his innocence. *Id.* at 38, 91 S.Ct. at 167.

■ This case satisfies the standards set forth in *North Carolina v. Alford.* White Hawk gave a written confession (P.C. 926). The state court, after post-conviction hearings, found that the state had a strong case against him (P.C. 918–19). This finding is presumptively correct. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). White Hawk pleaded guilty, despite his inability to admit that he committed the crime. The decision was his own. As long as it was voluntarily made, it is not for us to question it.[6]

### III.

■ Relying primarily on *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), White Hawk contends that he had a constitutional right to have a jury empanelled to determine his competency to plead guilty and that this right was denied. In *Pate* the Court held that a defendant has a constitutional right to receive a competency hearing if there is a reasonable doubt about his mental competency. The Court noted that in Illinois, the state out of which the case arose, a defendant was entitled to have a jury empanelled under Ill.Rev.Stat. c. 38, § 104–2 (1963). *Pate v. Robinson, supra,* 383 U.S. at 385, 86 S.Ct. at 842. *Pate* did not hold that the empanelling of a jury is constitutionally mandated. See *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1973). In *Drope* the Court discussed Mo.Rev.Stat. § 552.020 (1969), which described the proper procedures for determining competency to stand

trial. It found the statute "constitutionally adequate to protect a defendant's right not to be tried while legally incompetent." *Id.* at 173, 95 S.Ct. at 904. The statute did not require that a jury be empanelled. We note also that 18 U.S.C. § 4244 (1976), governing competency to stand trial in federal courts, requires that the trial court and not the jury determine competency. *United States v. Maret,* 433 F.2d 1064, 1067 (8th Cir.1970), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155 (1971). We know of no case where this statute has been successfully attacked. Accordingly we hold that there is no constitutional right to have a jury empanelled for determining competency to stand trial or plead guilty. See *Darrow v. Gunn,* 594 F.2d 767, 774 n. 10 (9th Cir.), *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *Bruce v. Estelle,* 536 F.2d 1051, 1059 (5th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *United States ex rel. McGough v. Hewitt,* 528 F.2d 339, 444 (3d Cir.1976). The Constitution does require, of course, that some impartial finder of fact hold a hearing on the issue of competency if there is any substantial reason to doubt that the defendant is competent. Here, petitioner concedes that a hearing was held. His complaint is simply that the facts were found by a judge instead of a jury.

■ Under South Dakota law as it existed when White Hawk pleaded guilty, a court had to order a jury empanelled if a doubt arose as to the sanity of the defendant. S.D.Comp.Laws Ann. § 23–38–2 (1967). But not even this *statutory* right was violated. The trial judge in this case reviewed the psychiatric evidence and expressly stated that he had "no doubt whatever of the mental and emotional capacity and ability of the defendant to stand trial ...." (T. 100).[7] We defer to this finding of fact.

---

6. For this same reason we think counsel acted competently, even though he did not suggest that the guilty plea be withdrawn. Petitioner had decided to plead guilty after being competently advised. He had a right to make that

decision, and the state has a right to rely on its finality.

7. White Hawk also contends that he suffered a due process violation because there was no hearing as to his competence to enter a guilty

For the reasons stated above, we affirm. We are grateful to appointed counsel for petitioner for his diligent and thorough service.

plea, as opposed to his competence to stand trial, citing *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (per curiam). The Court remanded *Westbrook* back to the Arizona Supreme Court for a determination of whether a separate hearing on competency to waive counsel was necessary in light of its recent opinion in *Pate v. Robinson, supra.* It did not hold that a separate inquiry had to be made, and we do not believe that an additional hearing was necessary in this case. The presence of competent counsel with whom the defendant can confer, and the trial court's finding, made after an evidentiary hearing, that defendant is competent to stand trial, guarantee that the decision to enter a guilty plea will be rationally made. Most courts of appeals have held that the standard of competence to plead guilty is the same as the standard of competence to stand trial—the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam). A separate inquiry need not be made. *United States ex rel. Heral v. Franzen,* 667 F.2d 633 (7th Cir.1981); *Allard v. Helgemoe,* 572 F.2d 1 (1st Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978); *United States ex rel. McGough v. Hewitt,* 528 F.2d 339, 342 n. 2 (3d Cir.1975); *Malinauskas v. United States,* 505 F.2d 649 (5th Cir.1974); *United States v. Harlan,* 480 F.2d 515 (6th Cir.), *cert. denied,* 414 U.S. 1006, 94 S.Ct. 364, 38 L.Ed.2d 242 (1973); *Wolf v. United States,* 430 F.2d 443 (10th Cir.1970); *but see United States v. Masthers,* 539 F.2d 721, 725–26 (D.C.Cir. 1976); *Sieling v. Eyman,* 478 F.2d 211 (9th Cir.1973).