UNITED STATES of America, Appellee

v.

**David MACKINS, Appellant**

**No. 99–4021.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 27, 2000

Filed July 12, 2000

---

Eric Pfisterer, Office of United States Attorney, 228 Walnut Street, Federal Building P.O. Box 11754, Harrisburg, PA 17109, Counsel for Appellee.

Ronald C. Travis, Rieders, Travis, Mussina, Humphrey & Harris, 161 West Third Street, P.O. Box 215, Williamsport, PA 17703, Counsel for Appellant.

Before: BECKER, Chief Judge, BARRY, and BRIGHT,* Circuit Judges

### OPINION OF THE COURT

BARRY, Circuit Judge.

David Mackins appeals his sentence of 360 months for conspiracy to distribute and possession with intent to distribute crack cocaine. He raises several issues regarding that sentence, only one of which need deter us long. That issue, simply

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

stated, is this: does a prior sentence imposed as the result of an *Alford* plea qualify as a "prior sentence" under U.S.S.G. § 4A1.2(a)(1) for purposes of computing a defendant's criminal history category under § 4A1.1? Upon reviewing the principles enunciated in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), we are persuaded, as was the District Court, that the answer is "yes."[1]

We are also asked to review whether the District Court erred in imposing a two-level upward adjustment pursuant to § 3B1.4 for Mackins's use of a minor in committing his offense, and whether the Court erred in refusing to grant Mackins a greater downward departure under § 5K1.1 than the one level he, in fact, received. We find no error in the imposition of the two-level adjustment and lack jurisdiction to review the District Court's discretionary decision to depart only one level. *See United States v. Khalil*, 132 F.3d 897, 898 (3d Cir.1997).

## I.

Beginning in the spring of 1997, David Mackins ran a drug distribution operation in Williamsport, Pennsylvania. Briefly summarized, Mackins brought multiple ounce quantities of crack cocaine from New York City into Williamsport, and there enlisted the help of local residents to sell the drugs to street level purchasers. LaPeace Rashie Upshaw and Jerome Staples assisted Mackins with his drug activities in New York City. It is estimated that during the course of the operation between 500 and 1500 grams of crack cocaine were sold.

On September 22, 1998, a federal grand jury returned a three-count superseding indictment charging Mackins, Upshaw and Staples with conspiracy to distribute and possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (Count I) and possession with intent

to distribute the same in violation of 21 U.S.C. § 841(a)(2) (Counts II, III and IV). Upshaw entered into a plea agreement with the government, while Mackins and Staples proceeded to trial. Before commencing the second day of trial, however, Mackins and Staples entered into plea agreements, and Mackins pled guilty to Count I of the superseding indictment on January 20, 1999.

Mackins's Presentence Investigation Report ("PSR") was then prepared. Beginning with a base offense level of thirty-six, *see* § 2D1.1(c)(2), a two-level adjustment was added as a specific offense characteristic for Mackins's possession of a dangerous weapon, *see* § 2D1.1(b)(1). In addition, a two-level adjustment was added for Mackins's role in the offense as an organizer or leader of criminal activity. *See* § 3B1.1(c). Finally, a two-level reduction was awarded in light of Mackins's acceptance of responsibility. *See* § 3E1.1(a). Mackins's total offense level, therefore, was thirty-eight.

With respect to Mackins's criminal history category, two prior sentences were considered for a total of five points. *See* § 4A1.1. The first was by way of a 1991 conviction for robbery for which Mackins received a sentence of 2 to 6 years imprisonment. *See* § 4A1.1(a) (three points). The second was by way of a 1994 attempted grand larceny conviction on his plea of guilty for which he received a one-year sentence, essentially being sentenced to time served. *See* § 4A1.1(b) (two points). In addition, two points were added pursuant to § 4A1.1(d) because Mackins was on parole at the time he committed the instant offense, and one point was added because the instant offense was committed less than two years after his release from imprisonment on a sentence counted under § 4A1.1(b). *See* § 4A1.1(e). The eight total criminal history points established a

---

1. As, of course, we will discuss more fully, an *Alford* plea generally refers to a guilty plea entered into by a defendant while expressly maintaining his or her innocence. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

criminal history category of IV, which, in conjunction with the total offense level of thirty-eight, resulted in a guideline imprisonment range of 324 to 405 months.

Mackins objected to the use of the sentence for attempted grand larceny to compute his criminal history category because that sentence was the result of an *Alford* plea. He objected, as well, when the Court raised the possibility that a two-level upward adjustment was warranted pursuant to § 3B1.4 because Mackins had used a minor, namely co-defendant Staples, to commit the offense. Although Mackins "concede[d that] the court likely has the power to raise sentencing issues *sua sponte*," he, nonetheless, argued that the Court should not do so here because the government had failed to object when the adjustment did not appear in the PSR. In the alternative, Mackins argued that the adjustment should not apply because, "[a]lthough Staples was not over 18 years of age throughout the course of the conspiracy," he was also "not a child of tender years" and he "voluntarily" participated in the drug activities.

The District Court was not persuaded. First, the Court determined that an *Alford* plea is an adjudication of guilt and, therefore, Mackins's *Alford* plea was properly included for purposes of establishing his criminal history category. Second, the Court found not only that "[t]here is no question that the two-level upward adjustment [pursuant to § 3B1.4] applies," but that the Court has the responsibility and duty to raise such issues on its own.

Given the one-level downward departure pursuant to § 5K1.1 and the two-level adjustment pursuant to § 3B1.4, Mackins's total offense level became thirty-nine. With a criminal history category of IV, his applicable guideline imprisonment range was 360 months to life. On November 16,

1999, the District Court sentenced Mackins to 360 months. This appeal followed.

## II.

■ We exercise appellate review pursuant to 18 U.S.C. § 3742(a) and (e) and 28 U.S.C. § 1291. The District Court's interpretation of a sentencing guideline presents a legal question over which we exercise plenary review. *See United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir.1996). Where, however, the District Court's decision is based "on factual determinations, we review for clear error." *United States v. Isaza–Zapata*, 148 F.3d 236, 237 (3d Cir.1998).

### A. Alford *pleas and U.S.S.G. § 4A1.1*

The most interesting issue on appeal, and one as to which there is a dearth of caselaw in this or any other court, is Mackins's contention that the District Court erred in calculating his criminal history category because it counted the sentence on his *Alford* plea.[2] As noted earlier, pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are assessed "for each prior sentence of imprisonment of at least sixty days," but not exceeding one year. Section 4A1.2(a)(1) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." *Id.* No other terms are defined in the guideline or in the commentary which follows.

Mackins argues that, "by definition, only if the defendant has acknowledged factual guilt by entry of a guilty plea, been found to be factually guilty as a result of a trial, or acknowledges the government has sufficient evidence, which if found credible, would support a finding of guilty is there an 'adjudication of guilt' usable i[n] calcu-

---

2. No one disputes that Mackins's guilty plea to attempted grand larceny should be characterized as an *Alford* plea. The state court, when accepting the plea, did not elicit an admission of guilt from Mackins and it appears that his sole motivation for pleading guilty was because the plea allowed him to be released on time served as opposed to remaining incarcerated while awaiting a trial date to be set.

lating criminal history." He contends that an *Alford* plea lacks the factual basis from which to conclude that the defendant is factually guilty of the offense. Instead, he submits, in an *Alford* plea the defendant asserts "factual innocence or denies guilt," but accepts the disposition in order to obtain a favorable sentence.

The origin of what has become known as an *Alford* plea—*North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)—must, of course, inform our decision. *Alford* was a defendant who had been indicted for first-degree murder, a capital offense in North Carolina. Given the strength of the state's evidence against him, Alford's attorney recommended that he plead guilty to a charge of second-degree murder, thereby avoiding the possibility of a death sentence. Prior to accepting his plea, the trial court heard a summary presentation of the state's case, including the sworn testimony of several witnesses who testified, *inter alia*, that Alford had "stated his intention to kill the victim" shortly before the murder "and returned home with the declaration that he had carried out the killing." *Id.* at 28, 91 S.Ct. 160. Alford insisted that he was innocent, but nonetheless confirmed his desire to plead guilty "because he faced the threat of the death penalty if he did not do so." *Id.* The trial court accepted his plea.

In subsequent federal habeas corpus proceedings, Alford challenged the voluntariness of his guilty plea, arguing "it was the product of fear and coercion." *Id.* at 29, 91 S.Ct. 160. The Court of Appeals for the Fourth Circuit agreed and held that Alford's plea of guilty "should ... have been rejected because [it was] impermissibly induced by his desire to eliminate the possibility of a death sentence." *Id.* at 30, 91 S.Ct. 160.

The Supreme Court, however, disagreed, and made clear that a defendant's desire to avoid a potential death sentence "does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice." *Id.* at 31, 91 S.Ct. 160. The Court then discussed the impact, if any, of Alford's insistence at the time of pleading guilty that he did not commit the murder. *See id.* at 32, 91 S.Ct. 160 (recognizing that "[i]f Alford's statements were to be credited as sincere assertions of innocence, .... it might be argued that the conviction ... was invalid, since his assertion of innocence negatived any admission of guilt"). The Court pointed out its prior approval of *nolo contendere* pleas, and explained that "[i]mplicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36, 91 S.Ct. 160. The Court could not "perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37, 91 S.Ct. 160. Indeed, the Court acknowledged that its earlier cases dealing with pleas of *nolo contendere* "would be directly in point if Alford had simply insisted on his plea but refused to admit the crime." *Id.* Although Alford's case presented a different factual scenario from that found in a plea of *nolo contendere*, *i.e.*, Alford expressly insisted on his innocence, the Court rejected the argument that it was constitutional error for the trial court to accept the plea given "the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it." *Id.* at 38, 91 S.Ct. 160.

The Court was clearly concerned with the apparent conflict in accepting Alford's plea of guilty coupled with his assertion of innocence. Nonetheless, relying his interest in pleading guilty, *i.e.*, avoiding a harsher sentence, and the evidence on the record of his actual guilt, the Court was

persuaded that he could, under such circumstances, plead guilty. Simply put, the Court was persuaded that once a factual basis for guilt is established, the fact that the defendant may continue to proclaim his innocence does not negate the legal conclusion that he is guilty. *See, e.g., White Hawk v. Solem,* 693 F.2d 825, 829 (8th Cir.1982) ("As long as there is in fact a strong factual basis supporting a guilty plea, it is valid even if the defendant protests his innocence."); *Government of Virgin Islands v. Berry,* 631 F.2d 214, 220 n. 3 (3d Cir.1980) (recognizing that, pursuant to *Alford,* "a guilty plea may be accepted notwithstanding the defendant's protestation of innocence").

■■■ As *Alford* and the cases which followed in its wake made clear, however, there must always exist some factual basis for a conclusion of guilt before a court can accept an *Alford* plea; indeed, a factual basis for such a conclusion is "an essential part" of an *Alford* plea. *Willett v. Georgia,* 608 F.2d 538, 540 (5th Cir.1979) ("In the face of a claim of innocence a judicial finding of some factual basis for defendant's guilt is an essential part of the constitutionally-required finding of a voluntary and intelligent decision to plead guilty."); *United States v. Casscles,* 494 F.2d 397, 399–400 (2d Cir.1974) (explaining that the District Court took "too narrow a view of *Alford*" by simply focusing on the fact that the defendant "made a voluntary and intelligent choice" to plead guilty without making sure "that there was a factual basis for the plea"). Accordingly, we conclude that an *Alford* plea is, without doubt, an adjudication of guilt and is no different than any other guilty plea for purposes of § 4A1.1.

We, therefore, reject Mackins's contention that the drafters of the Sentencing Guidelines, by not including the *Alford* disposition in the definition of "prior sentence" in § 4A1.2(a)(1), intended that it not be counted under § 4A1.1. Its omission from § 4A1.2(a)(1) most likely reflects an understanding that it was unnecessary to list it as a separate disposition. As we have, hopefully, satisfactorily explained, an *Alford* plea is simply a guilty plea, with evidence in the record of guilt, typically accompanied by the defendant's protestation of innocence and his or her unequivocal desire to enter the plea. *See* 400 U.S. at 38, 91 S.Ct. 160. That the defendant asserts his or her innocence, however, does not change the fact that he or she ultimately enters a guilty plea. Thus, as the government succinctly states, "[t]here is no such thing [as an *Alford* disposition], at least not separate and distinct from a plea of guilty."[3]

Mackins, nonetheless, argues that *his Alford* plea should not be regarded as an "adjudication of guilt" because the underlying record at the time he pled guilty to attempted grand larceny lacked a factual basis from which it could be concluded that he was guilty of the charged offense. He claims that "[t]here is not one iota of evidence that the government had a 'strong case', an 'overwhelming' case, or that the evidence against [him] 'substantially negated his claim of innocence.' "

■■■ Even assuming that Mackins made a "claim of innocence" at that time, and the record is far from clear on that point, his argument amounts to an attack on the underlying factual basis for his

---

3. Parenthetically, we observe that a Note to § 8A1.2 states that " '[p]rior criminal adjudication' means conviction by trial, plea of guilty (including an *Alford* plea), or plea of *nolo contendere."* § 8A1.2, comment. (n. 3(g)). Chapter Eight of the Guidelines, dealing with the sentencing of organizations, however, was added by amendment on November 1, 1991. In contrast, the language of § 4A1.2(a)(1) at issue in this case was enacted on November 1, 1987. Not to have included an *Alford* plea in § 4A1.2(a)(1) and its inclusion in § 8A1.2, four years later, cannot be read to evidence an intent on the part of the drafters of the Guidelines to exclude *Alford* pleas from § 4A1.2(a)(1). To the contrary, the Note to § 8A1.2 could be read as evidencing an understanding by the drafters of § 8A1.2 that, as we have concluded, an *Alford* plea is nothing more than a plea of guilty.

*Alford* plea.[4] In that regard, he is no different than a defendant who, having been convicted by a jury at some prior time, argues before a District Court at the time of sentencing on his new conviction that the prior conviction should not be included under § 4A1.1 because the verdict was based on legally insufficient evidence. It is a well-settled principle that, with very limited exceptions, a prior conviction cannot be collaterally attacked in the District Court at the time of sentencing on a new conviction. *See Moore v. United States,* 178 F.3d 994, 997 (8th Cir.) ("Generally, defendants may not collaterally attack prior or convictions used for sentencing enhancements."), *cert. denied,* — U.S. —, 120 S.Ct. 356, 145 L.Ed.2d 278 (1999); *United States v. Arango–Montoya,* 61 F.3d 1331, 1336 (7th Cir.1995) ("[A] prior conviction may be collaterally attacked at sentencing only where the defendant claims that he was deprived of counsel in violation of *Gideon [v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)].") (citation omitted); *United States v. Jones,* 27 F.3d 50, 52 (2d Cir.1994) ("[A] defendant may not collaterally attack prior state court felony convictions during a federal sentencing hearing unless the defendant was deprived of counsel in the state court proceedings."); *see also United States v. Thomas,* 42 F.3d 823, 824 (3d Cir.1994) ("[A] district court, when sentencing a defendant classified as a career offender under section 4B1.1, cannot entertain a constitutional challenge to the underlying convictions except in a case in which the defendant's right to counsel had been denied."); *United States v. Garcia,* 42 F.3d 573, 581 (10th Cir.1994) ("[W]ith the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under the career offender provisions of the Guidelines cannot consider a collateral attack on a prior conviction."). Moreover, a Note to § 4A1.2 makes it clear that "this guideline

and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." U.S.S.G. § 4A1.2, comment. (n.6). Accordingly, we accord Mackins's *Alford* plea the same finality we accord any other "adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere.*" *Id.*

In sum, because an *Alford* plea is an adjudication of guilt under § 4A1.2(a)(1), any sentence imposed pursuant to an *Alford* plea is a "prior sentence" for purposes of § 4A1.1. The District Court, therefore, did not err by including the sentence on Mackins's *Alford* plea in the calculation of his criminal history category.

*B. Enhancement for use of a minor*

We will swiftly dispose of Mackins's remaining contentions. He argues, as we noted at the outset, that the District Court should not have raised the applicability of a two-level adjustment pursuant to § 3B1.4 for use of a minor, *i.e.,* co-defendant Staples, *sua sponte.* He asserts, as well, that the Court erred in imposing that adjustment because the record lacks "a factual basis for determining that Staples became part of the conspiracy while still a minor."

■■■ We reject both contentions. First, the District Court did not err in raising the applicability of § 3B1.4 *sua sponte,* although, to be sure, it could not have imposed the adjustment unless the parties had been notified and been given an opportunity to brief the issue prior to sentencing, which they were. *Cf. Burns v. United States,* 501 U.S. 129, 138, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) ("We hold that before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, [Federal Rule

4. Although it is not relevant for purposes of our discussion, because it is relevant to our dissenting colleague's analysis, we point out

that the transcripts of Mackins's Alford plea lack any protestations by Mackins of his innocence. *See* App. at 34a–38a.

of Criminal Procedure] 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling."). As for Mackins's contention that the record is not clear as to whether Staples was a minor when he joined the conspiracy, that contention is not only raised for the first time in this appeal, but also contradicts his concession before the District Court that "Staples was not over 18 years of age throughout the course of the conspiracy." We, therefore, review the adjustment solely for plain error. *See United States v. Knobloch,* 131 F.3d 366, 370 (3d Cir.1997). Upon a review of the record, we find that the District Court did not commit error, much less plain error.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

BRIGHT, Circuit Judge, dissenting.

Although the majority concludes that an *Alford* plea falls within the definition of "prior sentence" under U.S.S.G. § 4A1.2(a)(1), I cannot agree. Such a reading need not and should not be read into the sentencing guidelines, for to do so may well lead to an unfair result.

An *Alford* plea results when a defendant pleads guilty and consents to the imposition of a sentence while still proclaiming his innocence of the charged offense. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *see also Wilson v. Lawrence County, Mo.,* 154 F.3d 757, 758 n. 1 (8th Cir.1998). The *Alford* plea is unique: it is a form of guilty plea entered into despite protestations of innocence. It is a plea that a defendant renders solely out of practical considerations and not as a mechanism for admitting guilt. Before a court may accept an *Alford* plea, the court must find "strong evidence of actual guilt" independent of the defendant's statements. *Alford,* 400 U.S. at 37, 91 S.Ct. 160.

Section 4A1.1 of the sentencing guidelines governs the calculation of a defen-

dant's criminal history category. Section 4A1.2 provides definitions and instructions for implementing § 4A1.1. When defining "prior sentence," § 4A1.2(a)(1) of the guidelines states: "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." Section 4A1.2(a)(1) does not mention *Alford* pleas. It does, however, require an "adjudication of guilt." Thus, when considering the proper application of the language of § 4A1.2(a)(1) to *Alford* pleas, I am forced to conclude that such a plea is not a prior sentence for purposes of criminal history calculations—at least not without indicia that it represented an actual "adjudication of guilt."

As a general matter, the structure of the sentencing guidelines punishes an individual for both the instant offense and all prior offenses. It does so by totaling points on a matrix comprised on one axis by the characteristics of the instant offense, and on the other axis by points accrued through prior offenses. Normally, the law requires that the government prove conduct of the instant offense by at least a preponderance of the evidence. However, when sentencing, prior convictions need not be proven: they are automatically entered on the criminal history axis. The prior conviction itself is proof of the defendant's guilt. In a situation such as this one, where the defendant argues that one of his prior convictions was based on an *Alford* plea, the usual assumptions about prior convictions may not necessarily hold. While an *Alford* plea should require independent proof of guilt to sustain the conviction, there may be instances where that is not the case.

Here, Mackins asserts that no independent evidence of guilt exists. On the record before this court, there is no evidence that Mackins did commit the crime to which he pleaded guilty under protestations of innocence. It is clear that Mackins was concerned primarily with avoid-

ing imprisonment in Rikers Island prison at the time he agreed to an *Alford* disposition on charges of grand larceny. He had spent more than one year at Rikers Island awaiting various pre-trial stages of his case. Had he persisted in seeking a trial, he would have been returned to Rikers Island for an indefinite period of time while the case proceeded. In addition, the state had charged him with attempted murder, grand larceny in the fourth degree, robbery in the first degree, criminal possession of a weapon, attempted murder in the second degree, six counts of robbery in the first degree, attempted grand larceny in the fourth degree, and four counts of kidnapping. After Mackins's co-defendant was acquitted at a separate trial, the state offered to dispose of this case if he would plea (under protestations of innocence) to a Class A misdemeanor for which Mackins would serve no time beyond the year he had already served at Rikers Island and for which he would not be subjected to a parole violation. Mackins had a tremendous incentive to take the plea rather than return to Rikers Island and face the risk of trial on the multitude of charges against him. The *Alford* plea represented a virtual "no lose" situation in which the circumstances now indicate Mackins may not have been guilty of one of the crimes that contributes to his criminal history category of IV.

The guidelines recognize the difference between an *Alford* plea and other types of pleas. The Supreme Court decided the *Alford* case more than ten years before the sentencing guidelines incorporated § 4A1 in 1987. We can presume that the Sentencing Commission intentionally excluded *Alford* pleas from § 4A1.2 because the Commission did not include the term in its list of what constitutes "adjudication of guilt." Additional support for this presumption exists because the Sentencing Commission expressly refers to the "*Alford* plea" in § 8A1.2 of the guidelines. The commentary at n. 3(g) of § 8A1.2 states: " 'Prior criminal adjudication' means conviction by trial, plea of guilty (including an *Alford* plea), or plea of *nolo contendere*." Because the Sentencing Commission expressly included *Alford* pleas within the definition of "guilty plea" in § 8A1.2, yet simultaneously excluded such pleas from § 4A1.2, we must assume that this exclusion was intentional. If the Commission intended to include *Alford* pleas in both sections it would have done so.

In addition, fundamental fairness requires that we allow district courts the discretion to examine the particular circumstances of cases in which criminal history calculations include *Alford* pleas. The sentencing guidelines are rigid, and they allow very little discretion to district court judges. This case presents this court with the opportunity to grant district judges discretion in an area where unique circumstances are relevant to the fundamental fairness of a defendant's ultimate sentence. Because *Alford* pleas are submitted under protestation of innocence, a district judge must be particularly vigilant about ensuring that sufficient evidence was adduced at the time the *Alford* plea was taken before including an *Alford* plea in a calculation of criminal history category; such vigilance is necessary to ensure that the guilty plea is properly treated as an adjudication of guilt.

David Mackins, who is twenty-four years old, appeals his thirty-year sentence for various drug offenses. At sentencing, the District Court adopted the recommendations of a pre-sentence report that assessed Mackins a total of eight criminal history points, placing him in a criminal history category of IV. Excluding the *Alford* plea leaves Mackins with a criminal history category of III and could result in a lesser sentence. In an instance such as this one, a district court should have the freedom to hold an evidentiary hearing in which the court can determine whether independent evidence of guilt underlay the *Alford* plea.

In a recent law review article discussing the federal sentencing guidelines, two law professors, Marc L. Miller and Ronald F. Wright, explain the problems of removing substantial discretion from judges who preside over a process as complicated as federal sentencing:

It is hard to know where to begin in describing the disaster that has become federal sentencing reform over the past twenty years. This disaster is all the more disheartening because the reform started with so much promise. Few reform efforts—especially in the area of criminal justice, and especially in the federal system—have had as much hope or thought at their core.

.    .    .    .    .

However, the sentencing guidelines that emerged from the new administrative process have been one of the great failures at law reform in U.S. history. The collapse was quick, and it has become difficult to defend the current system as the reasoned and principled system we believe Congress and reformers envisioned. The current guidelines are widely hated and in many ways dysfunctional. The expert agency that creates and monitors the guidelines—the U.S. Sentencing Commission—has morphed into an ineffectual caricature of an administrative agency. Rather than achieving honest, wise or equal sentencing, the primary effects of the guidelines (albeit in conjunction with other developments) have been to occupy increasing portions of the federal judicial workload, to raise the analysis of probation officers above the arguments of lawyers and the reasoning of judges, to shift the type of offenders in the federal system, to shift offenders from state to federal systems, and to pour offenders into federal prisons, for longer and longer periods.

Marc L. Miller & Ronald F. Wright, *Your Cheatin' Heart(land): The Long Search for Administrative Sentencing Justice*, 2 BUFFALO CRIM. L. REV. 723, 723, 726 (1999) (footnotes omitted).

Many federal judges and others agree that the guidelines are a disaster and can result in unfair, heavy prison sentences. Here, Mackins must serve approximately thirty years in prison, most of his adult life, with a substantial part thereof attributable to an alleged prior crime that he steadfastly denies. This case relates to a small area of the guidelines where this appellate court by its decision can improve guideline administration by giving the sentencing judge the power to inquire and determine whether or not independent evidence of guilt supports the *Alford* plea.

I would remand this case to the District Court for possible resentencing consistent with this opinion.