692 S.E.2d 569

**In the Interest of SPENCER R., a juvenile under the age of seventeen, Appellant.**

**No. 4668.**

Court of Appeals of South Carolina.

Heard Feb. 2, 2010.
Decided April 5, 2010.

518

David H. Cooley, of Myrtle Beach, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

PER CURIAM.

Spencer R. appeals his conviction for presenting a firearm, alleging the family court erred in finding sufficient evidence to support his conviction. We affirm in part and reverse in part.

## FACTS

The State charged Spencer R. with pointing or presenting a firearm after police received a 911 call reporting he was in front of his residence with a gun threatening people at a school bus stop. The police arrested Spencer R. and retrieved

a loaded assault rifle containing eighteen rounds of ammunition from his residence.

At trial, Mrs. L. testified she was about to leave for work when she received a text message on her cell phone from her fifteen-year-old daughter, Angela B., stating Spencer R. wanted to shoot and kill Angela B. After receiving the text message, Mrs. L. drove to Angela B.'s school and discovered the school suspended Spencer R. for three days after an altercation occurred between Spencer R. and one of Angela B.'s friends. After the school day concluded, Mrs. L. drove to the bus stop to pick up her children. She testified Spencer R. lived three houses away from the bus stop,[1] and when she passed by, she saw Spencer R. walk onto his driveway carrying a gun. Mrs. L. stated he was holding the gun at a ten o'clock and four o'clock angle, with the bottom of the gun about level with his chest and the barrel in the air. She testified he sat down in a chair on the driveway that was visible from the bus stop, but he did not see her or turn in her direction. Additionally, he did not wave or point the weapon at her. After seeing Spencer R., Mrs. L. called her husband because she felt threatened. Mrs. L.'s husband arrived shortly thereafter, and they waited until the school bus arrived. When Angela B. and her friend, Brett C., exited the school bus, Mrs. L. told them to hurry and get in her car because Spencer R. was "over there with some type of weapon." As she drove past Spencer R.'s house, Mrs. L. stated she told the children to "stay low, don't look, duck down," but she did not look at the children to see if they followed her instructions. After Mrs. L. arrived at her residence, she called the police.

Brett C. testified when he walked up to the bus stop with Angela B. that morning, he observed one of Angela B.'s friends slap Spencer R. Brett C. explained Spencer R. returned to the bus stop with his parents after the altercation and said he wanted to shoot Angela B. Brett C. testified when he and Angela B. got off the school bus later that afternoon, he saw Spencer R. standing in the driveway with a gun. He explained Spencer R. was not waving or aiming the gun at them, but was holding it up. Brett C. stated after he and Angela B. got into Mrs. L's car, Mrs. L. told them to duck

---

1. Each house lot was approximately one hundred feet wide.

down as they drove by Spencer R.'s house. He testified he looked out of the window as he ducked down and saw Spencer R. holding the gun and "staring us down like he wanted to shoot us."

Rodney T., another student, testified he also observed Spencer R. with a gun that same afternoon. After he left the school bus, he walked by Spencer R.'s house and saw Spencer R. sitting in a lawn chair in the driveway of his house with a gun between his legs and his hands on the barrel of the gun. Rodney T. asked Spencer R. what he was doing, and Spencer R. replied he "was going to shoot the bitch." Rodney T. stated he thought Spencer R. was referring to Angela B.

The family court found Spencer R. guilty of presenting a loaded assault rifle at Mrs. L., Angela B., and Brett C. In its order, the family court defined presenting:

> The court has considered all offered definitions of the term "presenting" and the [c]ourt finds that "presenting" means to offer for observation, show or display. In military terms, to present arms means to hold up a rifle vertically in front of the body with the muzzle up. The court finds that clearly, the muzzle of the gun was up. Clearly, the gun was in plain view; it was observed by Mrs. L., Brett, and Rodney.

This appeal followed.

## LAW/ANALYSIS

 Section 16-23-410 of the South Carolina Code (2003) states, in pertinent part: "It is unlawful for a person to present or point at another person a loaded or unloaded firearm. A person who violates the provisions of this section is guilty of a felony. . . ." Neither the South Carolina Code nor South Carolina case law squarely define the phrase "to present." However, our supreme court has previously determined what actions amount to presenting a firearm. In *State v. Reese*, the supreme court held Reese was not entitled to an involuntary manslaughter instruction because he "presented a firearm" when he took out a gun and waved it in the victim's face. 370 S.C. 31, 36, 633 S.E.2d 898, 900–01 (2006), *overruled on other grounds by State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009). Likewise, in *State v. Cabrera–Pena*, the court

found the defendant's conduct in showing the victim his pistol as a means of intimidation and forcing her to walk towards a pickup truck constituted a felony of either pointing or presenting a firearm or kidnapping, and thereby precluded an involuntary manslaughter charge. 361 S.C. 372, 381, 605 S.E.2d 522, 526–27 (2004). Here, Spencer R. maintains the court's analysis in *Reese* provides the only applicable clarification of the term "present," and because he did not wave his firearm, insufficient evidence exists to support his conviction for presenting a firearm. We disagree.

The implication from the court's discussion in *Reese* and *Cabrera–Pena* is that either "waving" or "showing" a gun at someone in a direct, actively aggressive, and threatening manner constitutes presenting a firearm. Additionally, in both cases the victims were in close proximity to the defendants. The case at bar presents a more ambiguous set of facts because Spencer R. displayed his assault rifle in the view of Mrs. L., Angela B., and Brett C. while sitting on his driveway a couple of houses away from the bus stop. Because the phrase "to present" has not been defined in either statutory or case law, the task of determining the plain and ordinary meaning of the term "to present" requires an examination of the term as it arises in other contexts. *See State v. Morgan,* 352 S.C. 359, 366, 574 S.E.2d 203, 206 (Ct.App.2002) ("When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning.").

Although various definitions of the infinitive "to present" exist, two definitions in particular apply in the area of presenting firearms: "to offer to view: show," and "to aim, point, or to direct (as a weapon) so as to face something or in a particular direction." *Merriam–Webster's Collegiate Dictionary* 921 (10th ed. 1993). There is no formal legal definition of the term "to present" a firearm. *See Black's Law Dictionary* 1221–22 (8th ed. 2004). While these two definitions provide some guidance, our court has recognized the inquiry cannot end here. *See Heilker v. Zoning Bd. of Appeals for City of Beaufort,* 346 S.C. 401, 409, 552 S.E.2d 42, 46 (Ct.App. 2001) ("[W]e are reluctant to rely upon either a dictionary or cases that have relied upon a dictionary for a definitive answer as to the definition ... when extensive case law exists that provides an accurate and reliable definition for the term.").

State legislatures in other jurisdictions have enacted similar statutes criminalizing the presenting of a firearm, but they have not employed the exact phrasing of "to present" as provided in section 16–23–410 of the South Carolina Code. Instead, they describe the crime as "exhibiting" or "brandishing" a firearm. *See, e.g.,* Cal.Penal Code § 417(a)(2) (2009) ("Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable as follows....."); Mo. Ann. Stat. § 571.030(1)(4) (2009) ("A person commits the crime of unlawful use of weapons if he or she knowingly ... [e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner....."); Va. Code Ann. § 18.2–282(A) (2009) ("It shall be unlawful for any person to point, hold or brandish any firearm or any air or gas operated weapon or any object similar in appearance, whether capable of being fired or not, in such manner as to reasonably induce fear in the mind of another....").

While none of these statutes are perfectly analogous to section 16–23–410, an examination of them in the aggregate reveals an effort by the legislatures in these jurisdictions to prohibit not only the overt action of pointing or directing a firearm at someone, but also the more passive action of showing or displaying a firearm in a threatening or menacing manner. Courts in these jurisdictions interpreting their respective statutes are consistent in this view. *See Morris v. Commonwealth of Va.,* 269 Va. 127, 607 S.E.2d 110, 114–15 (2005) (holding the defendant brandished his gun when he exhibited or exposed the weapon in a shameless or aggressive manner); *People v. Sanders,* 11 Cal.4th 475, 46 Cal.Rptr.2d 751, 905 P.2d 420, 457 (1995) ("The crime of brandishing consists of drawing or exhibiting, in the presence of another person, any firearm, whether loaded or unloaded, in a rude, angry or threatening manner."); *State v. Overshon,* 528 S.W.2d 142, 143 (Mo.Ct.App.1975) ("[I]t [is] unlawful for a person to exhibit, in the presence of one or more persons, a deadly weapon in a rude, angry, or threatening manner."). Thus, we define the phrase "to present" a firearm in section 16–23–410 as: to offer to view in a threatening manner, or to

show in a threatening manner. This definition is consistent with the South Carolina Supreme Court's analysis of presenting a firearm in *Reese* and *Cabrera–Pena* and also is in accord with the crime as it is enacted in other jurisdictions.

 The elements of presenting a firearm are: (1) presenting, (2) a loaded or unloaded firearm, (3) at another.[2] *See State v. Burton,* 356 S.C. 259, 264, 589 S.E.2d 6, 8 (2003). Thus, we must determine whether Spencer R. showed his rifle in a threatening manner at Angela B., Brett C., and Mrs. L. Initially, we note there is a lack of evidence establishing Spencer R. intended to present a firearm at Brett C. and Mrs. L. No testimony proved Spencer R. intended to specifically threaten Brett C. and Mrs. L. when Spencer R. was sitting on his property, and Mrs. L. admitted Spencer R. did not even turn towards her or see her when she initially observed Spencer R. holding his assault rifle.

However, we find sufficient evidence in the record exists to support Spencer R.'s conviction as to Angela B. *See In re John Doe,* 318 S.C. 527, 534, 458 S.E.2d 556, 561 (Ct.App.1995) (holding this court must affirm an adjudication of delinquency unless it is unsupported by the evidence). Here, an evaluation of the attendant circumstances surrounding Spencer R.'s actions establishes Spencer R. presented his assault rifle in a threatening manner at Angela B. Earlier in the morning, Brett C. heard Spencer R. say that he wanted to shoot Angela

---

2. Unlike other states where the crime of exhibiting or brandishing a firearm is completed after a person has shown the weapon to anyone in view, South Carolina's statute *explicitly* requires a firearm to be presented *at* someone. *Compare Burton,* 356 S.C. at 264, 589 S.E.2d at 8 (stating section 16–23–410 requires a firearm be presented *at* another person) (emphasis added), with *State v. Johnson,* 964 S.W.2d 465, 468 (Mo.Ct.App.1998) (holding the exhibiting of a weapon does not require that the item be observed, but merely that evidence of, or visible signs of the existence of the item be revealed). Thus, the State must offer direct or circumstantial evidence that a person specifically intended to present a firearm *at* someone before a conviction may be sustained under section 16–23–410. *See State v. Attardo,* 263 S.C. 546, 550, 211 S.E.2d 868, 870 (1975) ("A basic principle of criminal law is that the State has the burden of proof as to all of the essential elements of the crime."). For example, if A was walking from his garage to place a rifle in his truck and B drove by, the State would have to prove A presented his rifle purposely *at* B and offer evidence that A specifically intended to threaten B by presenting his rifle at her before A could be convicted of a violation of section 16–23–410.

B., and Mrs. L. testified she received a text message from Angela B. in the morning stating that Spencer R. wanted to shoot and kill Angela B. Later that afternoon, after Angela B. arrived at the school bus stop, Mrs. L. warned Angela B. to quickly enter the vehicle because Spencer R. had a gun and told them to duck as they drove by his house. Additionally, Brett C. observed Spencer R. standing in the driveway holding the assault rifle and staring at both him and Angela B. like he wanted to shoot them. Lastly, Rodney T. testified he believed Spencer R. was referring to Angela B. when Spencer R. stated he "was going to shoot the bitch" as Spencer R. was sitting in the driveway with his assault rifle.

Taken as a whole, Spencer R.'s actions as to Angela B. were not that of an ordinary citizen engaged in the lawful use of a firearm on his property.[3] Instead, the evidence demonstrates Spencer R. deliberately intended to show his rifle at Angela B. in a threatening manner. Even though Spencer R. did not wave or point the assault rifle directly at Angela B., his decision to sit in view of the school bus stop for an extended period of time while displaying his assault rifle, combined with the events occurring that day and Rodney T.'s and Brett C.'s testimony that Spencer R. said he wanted to shoot Angela B., constitute sufficient evidence to uphold Spencer R.'s conviction.[4]

## CONCLUSION

Based on the foregoing, the decision of the family court is **AFFIRMED IN PART, REVERSED IN PART.**

---

3. Our Legislature has contemplated situations in which a person may lawfully point or present a firearm at another person and has specifically excluded these types of acts from being punishable as a crime. *See* S.C.Code Ann. § 16–23–410 (2003) ("This section must not be construed to abridge the right of self-defense or to apply to theatricals or like performances.").

4. We note the State charged Spencer R. with pointing or presenting a firearm at Mrs. L., Angela B., and Brett C. in a single petition. Because the State did not charge Spencer R. with separate counts as to each individual, we hold there is sufficient evidence to affirm Spencer R.'s conviction as a whole because testimony establishes Spencer R. presented a firearm at Angela B. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").