**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

            *Plaintiff-Appellee,*

v.

RASHAD LATRON KING,

            *Defendant-Appellant.*

No. 10-5054

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, Chief District Judge.
(2:06-cr-00973-DCN-1)

Argued: December 9, 2011

Decided: March 8, 2012

Before AGEE, DAVIS, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Agee and Judge Davis joined.

## COUNSEL

**ARGUED:** Ann Briks Walsh, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant. Sean Kittrell, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for

Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, for Appellee.

## OPINION

BARBARA MILANO KEENAN, Circuit Judge:

Rashad Latron King was convicted after pleading guilty to one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). On appeal, King contends that the district court committed three errors at sentencing: 1) concluding that King's prior felony conviction under South Carolina law for pointing and presenting a firearm qualified as a "crime of violence;" 2) determining that a sentence imposed upon a plea entered in accordance with *North Carolina v. Alford*, 400 U.S. 25 (1970), was a "prior sentence" for purposes of the Sentencing Guidelines; and 3) failing to provide an adequate explanation for the sentence imposed. Upon our review, we affirm the sentence imposed by the district court.

I.

In August 2006, police officers in Charleston, South Carolina, responded to a report of an ongoing domestic dispute that involved a physical assault. After arriving at the scene of the dispute, the officers observed King engaged in an argument with a female, Kenya Wigfall. The officers investigated the dispute, and conducted a "records check" of both individuals to determine whether there were any outstanding warrants for their arrest. When the officers discovered that there was an outstanding warrant for King's arrest for probation violations, King attempted to flee but was quickly apprehended. After King was arrested, the officers conducted a search of King's person and found a loaded .357 caliber revolver in his pocket.

In September 2006, a federal grand jury indicted King on one count of unlawful possession of a firearm by a convicted felon. In August 2007, King pleaded guilty to the charge, without the benefit of a plea agreement.[1]

In September 2010, after King was convicted of the present offense, a probation officer prepared a final amended presentence report (PSR), which made recommendations to the district court regarding the advisory United States Sentencing Guidelines (Guidelines) calculations and several contested sentencing issues. King's extensive criminal record contained several prior convictions relevant to this appeal. This criminal record reflected that in July 2005, King was convicted of pointing and presenting a firearm at another and placing the victim in fear of her life, in violation of South Carolina Code § 16-23-410. King's record also revealed that in January 2007, he was arrested for murder after firing a gun during an altercation in which one person was killed. In April 2009, King entered an *Alford* plea to involuntary manslaughter based on this alleged conduct, and was sentenced to a term of 28 months' imprisonment.

The PSR recommended that King's 2005 conviction for pointing and presenting a firearm qualified as a predicate "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A), thereby resulting in a base offense level of 20. The PSR also recommended that three points be assigned to King's criminal history score on the basis of his *Alford* plea to the crime of involuntary manslaughter.

King objected to both recommendations. He argued that the pointing and presenting offense did not constitute a "crime of

---

[1]King was arrested by the South Carolina authorities in January 2007 on a murder charge. Upon his conviction of involuntary manslaughter, King remained in state custody until the end of his 28-month term of imprisonment. In June 2009, King completed that sentence and was returned to federal custody.

violence." King also asserted that a conviction upon an *Alford* plea is not an "adjudication of guilt," as set forth in U.S.S.G. § 4A1.2(a)(1), and thus could not have added points to his criminal history score. Before sentencing, the government filed a motion for an upward variance or an upward departure, contending that King was a recidivist offender, and that the purposes of 18 U.S.C. § 3553(a) would be served only by the imposition of a sentence above the advisory Guidelines range.

At sentencing, the district court overruled King's objections to the PSR, adopted the PSR in all respects, and determined that King's advisory Guidelines range was 46 to 57 months' imprisonment. The district court granted the government's motion for an upward variance on the basis of King's criminal history, as well as the district court's conclusion that King demonstrated a pattern of "increasing violence." The district court imposed a sentence of 96 months' imprisonment. King appeals.

## II.

King first argues that his prior South Carolina conviction for pointing and presenting a firearm does not satisfy the definition of a "crime of violence" under either of the two relevant clauses of the Guidelines, U.S.S.G. § 4B1.2(a)(1) and (2). He contends that, therefore, the district court erred in increasing his base offense level from 14 to 20. According to King, the pointing and presenting offense does not contain an element involving "the use, attempted use, or threatened use of physical force against the person of another," as stated in the first clause of this Guidelines provision. U.S.S.G. § 4B1.2(a)(1). King further maintains that the pointing and presenting offense does not involve "conduct that presents a serious potential risk of physical injury to another," as provided in the second clause of the Guidelines provision, because pointing and presenting a firearm is not similar to the listed examples of such crimes in that Guidelines clause. U.S.S.G. § 4B1.2(a)(2).

A.

We review de novo the issue whether a prior conviction qualifies as a "crime of violence" under the Guidelines for purposes of a sentencing enhancement. *United States v. Jenkins*, 631 F.3d 680, 682 (4th Cir. 2011). The term "crime of violence" is defined in the Guidelines as any state or federal offense punishable by imprisonment for a term exceeding one year, that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

We typically employ the "categorical approach" to determine whether a prior offense qualifies as a "crime of violence" under either clause of U.S.S.G. § 4B1.2(a). *United States v. Seay*, 553 F.3d 732, 737 (4th Cir. 2009). Under the categorical approach, we consider the fact of conviction and the offense "generically," that is, "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008); *see also United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998). For an offense to constitute a "crime of violence" under this approach, the offense's full range of proscribed conduct, including the least culpable proscribed conduct, must fall within the applicable Guidelines definition of that term. *United States v. Chacon*, 533 F.3d 250, 254-55 (4th Cir. 2008).

In a "narrow range of cases" when it is "evident from the statutory definition of the state crime that some violations of the statute are 'crimes of violence' and others are not," we look beyond the generic elements of the offense to the specific conduct underlying that prior offense. *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008). We apply this "modified categorical approach" in those narrow circumstances to ascertain whether the defendant's specific conduct qualifies as a "crime of violence." In making this determination, we may consider only the record of conviction, which includes the charging document, the plea agreement, and the transcript of the plea colloquy, and any explicit factual findings made by the trial court. *See United States v. Spence*, 661 F.3d 194, 198 (4th Cir. 2011) (citing *Shepard v. United States*, 544 U.S. 13, 20 (2005)).

In determining whether King's 2005 conviction for pointing and presenting a firearm is a "crime of violence," within the meaning of the Guidelines, we consider whether the statute under which he was convicted, South Carolina Code § 16-23-410 (Section 16-23-410), prohibits only one type of conduct or whether the statute may be violated by different types of conduct. The statute provides:

> *It is unlawful for a person to present or point at another person a loaded or unloaded firearm.*
>
> A person who violates the provisions of this section is guilty of a felony and, upon conviction, must be fined in the discretion of the court or imprisoned not more than five years. This section must not be construed to abridge the right of self-defense or to apply to theatricals or like performances.

*Id.* (emphasis added). The parties contend, and we agree, that the plain language of Section 16-23-410 proscribes only one type of conduct, namely, pointing or presenting a firearm at

another.**²** This conclusion is supported further by the fact that a conviction under the statute is uniformly classified as a felony, with an attendant single range of punishment of imprisonment up to five years or a fine imposed by the court. *See Chambers v. United States*, 555 U.S. 122, 127 (2009) (considering whether statute provided different offense levels and ranges of punishment in determining whether categorical or modified categorical approach should be employed). Accordingly, we apply a categorical approach to determine whether the offense of pointing and presenting a firearm qualifies as a "crime of violence" under the Guidelines.

## B.

Employing the categorical approach, we consider the issue whether Section 16-23-410 qualifies under the first clause of the Guidelines definition of a "crime of violence," as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). When we consider whether an offense qualifies as a "crime of violence" under the Guidelines, or as a "violent felony" under the Armed Career Criminal Act (the ACCA),**³** we are "bound by [a state supreme court's] interpretation of state law, including its determination of the elements of" the offense. *Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010). If the highest court of the state has not decided an issue of state law, we generally defer to the state's intermediate appellate courts on the issue. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

---

**²**The government also argues, in the alternative, that it would similarly prevail under the modified categorical approach.

**³**We rely on precedents evaluating whether an offense constitutes a "crime of violence" under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a "violent felony" under the ACCA, because the two terms have been defined in a manner that is "substantively identical." *United States v. Jarmon*, 596 F.3d 228, 231 n.* (4th Cir. 2010).

The Supreme Court of South Carolina has held that the offense of pointing and presenting a firearm under Section 16-23-410 contains three elements: "(1) pointing or presenting; (2) a loaded or unloaded firearm; (3) at another." *State v. Burton*, 589 S.E.2d 6, 8 (S.C. 2003). The Court of Appeals of South Carolina has interpreted Section 16-23-410 further as requiring that a defendant must "specifically intend[ ] to present a firearm *at* someone" before a conviction may be sustained under that statute. *In re Spencer R.*, 692 S.E.2d 569, 573 n.2 (S.C. Ct. App. 2010) (emphasis in original).

In addition, the Court of Appeals of South Carolina has held that Section 16-23-410 requires that the act of pointing or presenting a firearm be committed in a threatening manner. *Id.* at 572-73. In reaching this conclusion, the court surveyed similar statutes from other states, which prohibit "exhibiting" or "brandishing" a firearm. *Id.* at 572. The court concluded that such other statutes were intended to prohibit "not only the overt action of pointing or directing a firearm at someone, but also the more passive action of showing or displaying a firearm in a threatening or menacing manner." *Id.* Consistent with the purposes of those similar state statutes, the court interpreted the term "to present" as meaning "to offer to view in a threatening manner, or to show in a threatening manner." *Id.*

We defer to the South Carolina courts' interpretation of the elements of Section 16-23-410, and conclude that an offender must point, present, or show a firearm at another in a threatening manner to be convicted of this offense.[4] Because King

---

[4]Although the decision in *In re Spencer R.* only expressly interpreted the term "to present" in Section 16-23-410, we conclude that the court's interpretation that the act of presenting must be done in a threatening manner likewise applies to the term "to point." The court in *In re Spencer R.* compared the term "to point," referring to overt actions that are inherently threatening, to the term "to present," which the court held encompasses more passive activity but which similarly must be performed in a threatening manner. Thus, applying the court's rationale, the two disjunctively worded terms stand on equal footing by both requiring threatening behavior.

was convicted under Section 16-23-410 for pointing and presenting a firearm, he necessarily pointed and presented a firearm in a threatening manner. Thus, we conclude that King's conviction for pointing and presenting a firearm in violation of Section 16-23-410 was for an offense that "has as an element the . . . threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), and therefore qualifies as a "crime of violence" under the first clause of the Guidelines definition of that term.[5] Because we conclude that pointing and presenting a firearm in violation of Section 16-23-410 qualifies as a crime of violence under the first clause of the Guidelines definition of that term, we need not address King's argument that this offense does not qualify as a crime of violence under the second clause of the Guidelines definition.

## III.

King next argues that the district court erroneously added three points to his criminal history score. According to King, those points should not have been added, because the term of imprisonment received following his *Alford* plea to the involuntary manslaughter charge does not qualify as a "prior sentence" imposed on an "adjudication of guilt" within the meaning of U.S.S.G. § 4A1.2(a)(1).

King maintains that a sentence imposed following an *Alford* plea is not a "prior sentence" under this Guidelines provision, because the definition contained in that section identifies three examples of an "adjudication of guilt," including a "guilty plea, trial, or plea of nolo contendere," but fails

---

[5]We note that in support of his position, King cites an unpublished opinion, *United States v. Byrd*, 400 F. App'x 718 (4th Cir. 2010), which concluded that pointing and presenting a firearm under South Carolina law does not include an element that physical force be used, attempted, or threatened before a violation will occur. *Id.* at 721. However, unpublished opinions are not binding in this Circuit, *see* Local Rule 36(b), and, for the reasons we have expressed, we reach a contrary conclusion.

to identify an *Alford* plea. U.S.S.G. § 4A1.2(a). According to King, the omission of an *Alford* plea in this Guidelines provision was intentional, because the Guidelines reference an *Alford* plea elsewhere in a section addressing the sentencing of organizations. *See* U.S.S.G. § 8A1.2 n.3(G).

Alternatively, King contends that our recent decision in *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), supports his position that a term of imprisonment imposed after an *Alford* plea does not qualify as a "prior sentence" for purposes of U.S.S.G. § 4A1.2(a)(1). We held in *Alston* that a prosecutor's proffer of the factual basis for an *Alford* plea may not be used to identify a prior conviction as a "violent felony" under the ACCA. 611 F.3d at 227. King contends that, similarly, an *Alford* plea may not be used to establish a prior conviction as a "crime of violence" under the Guidelines. We disagree with King's arguments.

On a challenge to a district court's application of the Guidelines, we review questions of law de novo and findings of fact for clear error. *United States v. Sosa-Carabantes*, 561 F.3d 256, 259 (4th Cir. 2009). The Guidelines define the disputed term, "prior sentence," as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The Application Note to this section of the Guidelines further defines "prior sentence" as referring to "a sentence imposed prior to sentencing on the instant offense." U.S.S.G. § 4A1.2 n.1. For each such "prior sentence" that resulted in a term of imprisonment exceeding one year and one month, the Guidelines add three points to a defendant's criminal history score. U.S.S.G. § 4A1.1(a).

An *Alford* plea is "an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011) (citing *Alford*, 400 U.S. at 37). A trial court may accept

an *Alford* plea when: (1) the defendant "intelligently concludes that his interests require entry of a guilty plea;" and (2) "the record before the judge contains strong evidence of actual guilt." *United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007) (quoting *Alford*, 400 U.S. at 37) (emphasis omitted).

The "distinguishing feature" of an *Alford* plea is that the defendant does not confirm the factual basis underlying his plea. *Alston*, 611 F.3d at 227 (citing *United States v. Savage*, 542 F.3d 959, 962 (2d Cir. 2008)). The trial court's evaluation and ultimate acceptance of an *Alford* plea ensures "that a defendant's 'protestations of innocence' do not undermine confidence that the constitutional requirement that a plea of guilty be voluntary and intelligent has been satisfied." *Taylor*, 659 F.3d at 347 (citing *Alford*, 400 U.S. at 37-39).

The Third Circuit, which has considered the precise issue currently before us, has concluded that a sentence imposed after an *Alford* plea qualifies as a "prior sentence" under U.S.S.G. § 4A1.2(a) for purposes of calculating an offender's criminal history. *See United States v. Mackins*, 218 F.3d 263, 269 (3d Cir. 2000). Other circuits have held in analogous contexts that convictions resulting from *Alford* pleas can serve as predicate convictions for purposes of sentencing enhancements. *See United States v. Vinton*, 631 F.3d 476, 486 (8th Cir. 2011) (conviction following *Alford* plea qualifies as conviction for a "crime of violence" as defined in U.S.S.G. § 4B1.2(a)(1)); *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1197-98 (9th Cir. 2006) (conviction following *Alford* plea qualifies as conviction for a "crime of violence" as defined in U.S.S.G. § 2L1.2(b)(1)(A)(ii)); *see also Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004) (holding that "[a]n *Alford* plea *is* a guilty plea," and thus is included as a "conviction" of an "aggravated felony" under the plain language of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A)).

Mindful of these decisions, we first consider whether a district court's acceptance of an *Alford* plea qualifies as an "adjudication of guilt" under U.S.S.G. § 4A1.2(a). We conclude that it does. A court's acceptance of an *Alford* plea, like an acceptance of a guilty plea, indisputably qualifies as an "adjudication." The entry of an *Alford* plea must conform to the process in which the district court determines how a defendant pleads to a criminal charge and whether the defendant's plea is valid. *See United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (in federal court, *Alford* pleas, like guilty pleas, must be conducted in compliance with the basic requirements of Fed. R. Crim. P. 11).

Here, the parties dispute whether a trial court's acceptance of an *Alford* plea qualifies as an "adjudication *of guilt*." We conclude that the *Alford* plea does meet this qualification, because there must be a factual basis for an *Alford* plea, and an *Alford* plea can only be accepted when the record "contains strong evidence of actual guilt." *Mastrapa*, 509 F.3d at 659 (quoting *Alford*, 400 U.S. at 37). Such a strong factual basis for guilt is "an essential part" of an *Alford* plea. *Mackins*, 218 F.3d at 268. Further, although the entry of an *Alford* plea permits the defendant to maintain his innocence, the plea is considered in other respects as a plea of guilty. *See Taylor*, 659 F.3d at 347 (when entering an *Alford* plea, a defendant "maintains his innocence but pleads guilty for reasons of self-interest"); *see also Alford*, 400 U.S. at 37 (acceptance of a plea pursuant to *Alford* requires the defendant to have "intelligently concluded that his interests require entry of a guilty plea"). Accordingly, we conclude that an *Alford* plea is an "adjudication of guilt," within the meaning of U.S.S.G. § 4A1.2(a)(1).

We disagree that only adjudications of guilt that are listed in U.S.S.G. § 4A1.2(a)(1), namely, a "guilty plea, trial, or plea of nolo contendere," fall within the definition in that section. As we have stated, the "distinguishing feature" of an *Alford* plea is that "the defendant does not confirm" the factual basis

underlying his plea. *Taylor*, 659 F.3d at 347. This distinction is wholly immaterial with respect to the definition of "prior sentence" in U.S.S.G. § 4A1.2(a)(1). The criminal history provisions in the Guidelines increase a defendant's sentencing range based upon the number and severity of prior convictions, and the length of past sentences of incarceration. *See* U.S.S.G. § 4A1.1. A defendant's entry of an *Alford* plea does not affect the adjudication of the defendant's guilt, nor the trial court's imposition of sentence.

Our conclusion is not altered when we consider a comment to another provision in the Guidelines, which addresses the sentencing of organizations, and describes the term "prior criminal adjudication" as meaning "conviction by trial, plea of guilty (including an *Alford* plea), or plea of nolo contendere." U.S.S.G. § 8A1.2 n.3(G). As the Third Circuit observed in *Mackins*, this comment to U.S.S.G. § 8A1.2 may simply indicate that the Sentencing Commission has determined that an *Alford* plea "is nothing more than a plea of guilty." 218 F.3d at 268 n.3. Thus, like the Third Circuit, we do not find that this comment compels a contrary interpretation of the term "prior sentence" in U.S.S.G. § 4A1.2.

Lastly, we reject King's argument that our holding in *Alston* precludes a conviction entered after entry of an *Alford* plea from being considered as a "conviction" under the Guidelines. In *Alston*, we considered whether a defendant's second-degree assault conviction qualified as a conviction for a "violent felony" under the ACCA, when the conviction was based on an *Alford* plea. 611 F.3d at 222. Because a second-degree assault conviction is not a "violent felony" under the categorical approach, the district court used the modified categorical approach and reviewed the transcript of Alston's *Alford* plea hearing to determine the specific factual basis for the prior conviction. *Id.* at 223. We held that "a prosecutor's proffer of the factual basis for an *Alford* plea does not satisfy *the requirements of the modified categorical approach*" because the defendant does not admit guilt, or admit or accept

the facts proffered by the prosecutor. 611 F.3d at 226 (emphasis added).

The issue before us, however, does not require that we determine the factual basis of King's prior conviction. Here, it is the conviction itself that is relevant to our determination whether the sentence imposed after King's *Alford* plea qualified as a "sentence previously imposed *upon adjudication of guilt*." U.S.S.G. § 4A1.2(a)(1) (emphasis added). And, as we explained in *Alston*, "the Sixth Amendment jury trial right does not include a right to have a jury find the fact of a prior conviction." 611 F.3d at 225 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998)). Thus, we conclude that the concerns mandating our holding in *Alston* are not present here. Accordingly, we agree with the Third Circuit that a sentence imposed following an *Alford* plea qualifies as a "prior sentence" within the meaning of U.S.S.G. § 4A1.2. *See Mackins*, 218 F.3d at 269.

IV.

King additionally argues that the district court imposed a procedurally unreasonable sentence by granting the government's motion for an upward variance and imposing sentence, without providing an adequate explanation at the sentencing hearing. We conclude that the district court did not err.

We review any sentence, whether inside, just outside, or significantly outside the Guidelines range, under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). However, we must first ensure that the district court has not committed any "significant procedural error," which includes "failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Gall*, 552 U.S. at 51).

The district court must select a sentence based on an "individualized assessment" of the facts presented. *Gall*, 552 U.S.

at 50. Every sentence requires an adequate explanation. *United States v. Hernandez*, 603 F.3d 267, 271 (4th Cir. 2010). When the district court imposes sentence within the Guidelines, "the explanation need not be elaborate or lengthy." *Id.* However, when a district court applies a departure provision or variance from the Guidelines range based upon the 18 U.S.C. § 3553(a) factors, "the district court must give 'serious consideration to the extent' of the departure or variance, and 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011) (quoting *Gall*, 552 U.S. at 46, 50). The district court must "state in open court" the particular reasons supporting its chosen sentence. 18 U.S.C. § 3553(c).

King's argument that he received a procedurally unreasonable sentence is refuted by the record before us. At the sentencing hearing, the district court stated its reasons for the chosen sentence and its decision to grant the upward variance, which plainly were based on the court's primary concerns regarding King's extensive criminal history at the age of 26, and his pattern of increasing violence. The district court observed that King "has two juvenile convictions, [and] ten adult convictions, four of which are violent convictions." In addition to those convictions, the district court referred to multiple instances in which King disregarded the terms of his bond and his probation.

The district court further expressed its determination that "[King's] violence is increasing." In support of this conclusion, the district court referenced: 1) King's conviction in 2003 for failure to stop for a "blue light;" 2) his conviction in 2005 for pointing and presenting a firearm at another; 3) his conviction in 2007 for the present offense, unlawful possession of a firearm by a felon, which the court noted was based upon conduct which "involve[d] guns and violence;" and 4) King's criminal activity in 2007, about which the court stated

that "[King] kills somebody, [and] pleads to involuntary man-slaughter."[6]

The district court also referenced several of the factors contained in 18 U.S.C. § 3553(a). The court explained that the sentence imposed was "necessary to reflect the seriousness of the offense and promote respect for the law," to provide "adequate deterrence to criminal conduct, based on the convictions that I just outlined," and finally, "to protect the public from further crimes of the defendant, which was certainly apparent in this situation."

We conclude that the district court adequately explained at the sentencing hearing its chosen sentence and its decision to grant an upward variance. Before imposing sentence, the district court analyzed King's criminal history in its entirety, as well as specific prior convictions, and reasonably concluded that King's criminal history demonstrated that he had engaged in increasingly violent conduct. The district court held that based on these considerations, an upward variance was appropriate. The district court supported the variant sentence by citing several particular factors of § 3553(a), which the court determined required the sentence ultimately imposed. 18 U.S.C. § 3553(a)(2). In view of the district court's analysis, we conclude that the district court demonstrated reasoned decision-making and applied the factors of § 3553(a) to the particular facts and circumstances related to King. *See Carter*, 564 F.3d at 329.

The district court also stated at the sentencing hearing that it would issue a written sentencing order further stating the grounds on which the court resolved King's objections to the PSR's Guidelines calculations, as well as the court's basis for the upward variant sentence imposed. In a twelve-page sen-

---

[6]It is unclear from the sentencing transcript whether the district court also intended to refer to King's conviction in 2005 for "attempted burglary second degree."

tencing order, the district court explained that King's sentence was required based on the § 3553(a) factors previously identified at the sentencing hearing, the nature of the present offense, King's criminal history, and the fact that King's "willingness to resort to violence is clearly escalating over time." In substance, the reasons supporting King's sentence stated in the sentencing order reflect in all material respects the reasons given by the court at the sentencing hearing. Because we already have concluded that the reasons given at the hearing adequately explained King's sentence, we reject King's argument that the district court's issuance of a written sentencing order failed to afford King an opportunity to respond to the basis for the variance.

## V.

For these reasons, we affirm the sentence imposed by the district court.

*AFFIRMED*