**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4658**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

ALANTE MARTEL NELSON,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:21-cr-00014-TSK-MJA-1)

---

Argued:  October 30, 2024                       Decided:  August 15, 2025

---

Before DIAZ, Chief Judge, KING, Circuit Judge, and Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

---

Affirmed by published opinion.  Judge King wrote the opinion, in which Chief Judge Diaz and Judge Flanagan joined.

---

**ARGUED:** Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant.  Eleanor F. Hurney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.  **ON BRIEF:** William Ihlenfeld, United States Attorney, Wheeling, West Virginia, Christopher L. Bauer, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.

KING, Circuit Judge:

In February 2022, defendant Alante Martel Nelson pleaded guilty in the Northern District of West Virginia to two offenses:  possession with intent to distribute heroin, in contravention of 21 U.S.C. § 841(a)(1), (b)(1)(C); and unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The ensuing sentencing proceedings involved a protracted debate — necessitating the continuance of the sentencing hearing and multiple briefs — over whether Nelson should be designated a career offender under the Sentencing Guidelines.  At the conclusion of the sentencing hearing in July 2022, the district court announced that it would sentence Nelson as a career offender to a total of 151 months in prison, the low end of the resulting advisory Guidelines range.  That oral ruling was followed in November 2022 by a written opinion elaborating on the court's decision, along with the final criminal judgment.  *See United States v. Nelson*, No. 1:21-cr-00014 (N.D. W. Va. Nov. 14, 2022), ECF Nos. 86 & 88.

Nelson timely noted this appeal from his sentence, contesting the career offender enhancement and invoking our Court's jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  As explained herein, we affirm.

I.

A.

Nelson was sentenced as a career offender under section 4B1.1 of the 2021 edition of the Sentencing Guidelines, which provides for the career offender enhancement

2

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*See* USSG § 4B1.1(a) (2021). The instant felony conviction and two prior felony convictions used to designate Nelson a career offender were all deemed to be convictions of a "controlled substance offense." For purposes of the career offender guideline, such an offense is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b). Because of the career offender enhancement, Nelson's advisory Guidelines range was 151 to 188 months of imprisonment.[1]

Nelson unsuccessfully argued in the district court and continues to maintain on appeal that neither of the two prior felony convictions used to designate him a career offender — a Virginia state conviction and a federal conviction — was of a "controlled substance offense" under the applicable Guidelines provisions. We address Nelson's contentions regarding the prior convictions in turn, utilizing a de novo standard of review. *See United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020) (observing that whether "convictions count as 'controlled substance offense[s]' that trigger the career-offender

---

[1] In a dispute we need not resolve today, the parties disagree over what Nelson's advisory Guidelines range would have been without the career offender designation.

3

enhancement is a 'legal issue we review de novo'" (alteration in original) (quoting *United States v. Dozier*, 848 F.3d 180, 182-83 (4th Cir. 2017))).

B.

We begin with Nelson's prior Virginia state conviction, which is a 2017 drug distribution conviction pursuant to Virginia Code section 18.2-248. Relying on our decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), Nelson contends that this is not a proper predicate for the career offender enhancement in that there is not the necessary categorical match between the conduct criminalized by the Virginia statute and the pertinent Guidelines definition of a "controlled substance offense."

1.

As we explained in *Campbell*, "[t]o determine whether a conviction under an asserted predicate offense statute . . . constitutes a 'controlled substance offense' as defined by the Sentencing Guidelines, we employ the categorical approach." *See* 22 F.4th at 441 (citing *Ward*, 972 F.3d at 368). The categorical approach requires us to "focus[] on the elements of the prior offense rather than the conduct underlying the conviction." *See Dozier*, 848 F.3d at 183 (emphasis and internal quotation marks omitted). "If the 'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a career offender enhancement." *See Campbell*, 22 F.4th at 441 (quoting *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012)).

4

In employing the categorical approach in *Campbell*, we determined that the same Guidelines definition of a "controlled substance offense" pertinent herein "does not include an attempt crime." *See* 22 F.4th at 440.[2]

Moreover, we concluded that the least culpable conduct criminalized by the *Campbell* defendant's predicate offense statute — a West Virginia drug distribution statute — is the attempt offense of attempted delivery. *See* 22 F.4th at 441-42. That conclusion was based on the language of the West Virginia statute rendering "it 'unlawful for any person to . . . deliver . . . a controlled substance,'" *id.* (emphasis omitted) (quoting W. Va. Code § 60A-4-401(a)), along with the statutory definition of the term "deliver" as being "'the actual, constructive *or attempted* transfer from one person to another of' controlled substances," *id.* at 442 (quoting W. Va. Code § 60A-1-101(h)). As we interpreted that language, an "attempted transfer" equals an "attempted delivery." *Id.* (specifying that "the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance"). Consequently, we concluded that Campbell's conviction under the West Virginia statute was an invalid basis for a career offender enhancement, in that an attempt offense is not included in the pertinent Guidelines definition of a "controlled substance offense." *Id.* at 442, 449.

---

[2] The Sentencing Commission later amended the Guidelines to include within the definition of a "controlled substance offense" an "attempt[] to commit . . . any such offense." *See* USSG § 4B1.2(d) (2023).

2.

In relying on our *Campbell* decision, Nelson asserts that his Virginia predicate offense statute similarly criminalizes the attempt offense of attempted delivery and thus his Virginia conviction cannot support the career offender enhancement. In pertinent part, the Virginia statute makes it "unlawful for any person to . . . distribute . . . a controlled substance." *See* Va. Code § 18.2-248(A). The term "'[d]istribute' means to deliver other than by administering or dispensing a controlled substance." *Id.* § 54.1-3401. And "'[d]eliver' or 'delivery' means the actual, constructive, *or attempted* transfer of [a controlled substance]." *Id.* (emphasis added). To be sure, the Virginia statute thus could be interpreted — like *Campbell*'s West Virginia statute — to equate an "attempted transfer" with an "attempted delivery."

A hurdle for Nelson's *Campbell* theory arises, however, from our post-*Campbell* line of decisions beginning with *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023).[3] In *Groves*, we rejected the defendant's effort to liken the federal drug distribution statute — 21 U.S.C. § 841(a)(1) — to the West Virginia statute analyzed in *Campbell*. For its part, § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance." *See* 21 U.S.C. § 841(a)(1). The definition of "distribute" is "to deliver (other than by administering or dispensing) a controlled

---

[3] In February 2023, we granted Nelson's unopposed motion to place this appeal in abeyance pending our *Groves* decision, which we subsequently issued in April 2023. As the timing reflects, the district court did not have the benefit of *Groves* when it sentenced Nelson as a career offender, though the district court's written opinion and *Groves* share some similar reasoning.

6

substance." *Id.* § 802(11). And the term "deliver" is defined as "the actual, constructive, *or attempted* transfer of a controlled substance." *Id.* § 802(8) (emphasis added).

Of course, this language is almost an exact match to the relevant language of Nelson's Virginia predicate offense statute. And like Nelson now does, the *Groves* defendant urged us to rule that this language serves to criminalize the attempt offense of attempted delivery, in that an "attempted transfer" is the same as an "attempted delivery." *See* 65 F.4th at 172. Rather than so ruling in *Groves*, however, we followed the lead of three of our sister courts of appeals and rejected the proposition that "— by incorporating a definition of 'delivery' that includes 'attempted transfer' — § 841(a)(1) criminalizes the attempt offense of attempted delivery." *Id.* (citing decisions of the Third, Sixth, and Eleventh Circuits concluding "that an 'attempted transfer' is not an 'attempted delivery' under § 841(a)(1) and analogous state drug distribution statutes").

As our *Groves* decision explained, the proper way to see an "attempted transfer" in a § 841(a)(1) case is "as 'a *completed delivery* rather than an attempt crime.'" *See* 65 F.4th at 172 (quoting *United States v. Booker*, 994 F.3d 591, 596 (6th Cir. 2021)); *see also United States v. Penn*, 63 F.4th 1305, 1317 (11th Cir. 2023) (recognizing that "the attempted transfer of drugs constitutes a completed distribution offense"); *United States. v. Dawson*, 32 F.4th 254, 259 (3d Cir. 2022) (ruling that a "drug 'delivery' is a complete[d] offense, whether it is committed via actual or attempted transfer of drugs"). That is because "attempt offenses are criminalized separately from completed offenses under the [federal scheme]." *See Groves*, 65 F.4th at 172. Specifically, "federal law criminalizes attempt offenses with respect to controlled substances in 21 U.S.C. § 846." *Id.* So, "[t]o avoid

7

rendering § 846 superfluous," an attempted transfer under § 841(a)(1) must be interpreted "to be a completed delivery and thus a completed distribution offense." *Id.* (invoking *Booker*, 994 F.3d at 596, for the proposition that "[w]e must 'construe statutes, where possible, so as to avoid rendering superfluous any parts thereof'" (alteration in original) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991))).[4]

Since *Groves*, we have rejected similar efforts to analogize state drug distribution statutes to *Campbell*'s West Virginia statute, on the ground that each of those states has a statutory scheme — like the federal scheme involving § 841(a)(1) and § 846 at issue in *Groves*, and unlike the West Virginia scheme as it was presented in *Campbell* — that criminalizes attempt offenses separately from completed offenses. *See United States v. Miller*, 75 F.4th 215, 228-31 (4th Cir. 2023) (North Carolina); *United States v. Davis*, 75 F.4th 428, 442-45 (4th Cir. 2023) (South Carolina); *United States v. Suncar*, 142 F.4th 259, 266-67 (4th Cir. 2025) (Pennsylvania).

Critically, and despite Nelson's efforts to convince us otherwise, we now recognize that Virginia also has a scheme that criminalizes attempt offenses separately from completed offenses and that is materially indistinguishable from the state and federal

---

[4] As an additional basis for our ruling that § 841(a)(1) does not criminalize the attempt offense of attempted delivery, we recognized in *Groves* that a contrary "interpretation would absurdly exclude § 841(a)(1) distribution offenses — quintessential federal drug trafficking crimes — from treatment as a 'controlled substance offense' in Guidelines calculations." *See* 65 F.4th at 172-73 (relating the Sixth Circuit's discussion of "how utterly 'remarkable' it would be to conclude 'that § 841(a)(1) did not describe a "controlled substance offense" under [the Guidelines]'" (quoting *Booker*, 994 F.3d at 596)).

schemes analyzed in *Groves* and its progeny.  Under Virginia's scheme, attempt offenses are criminalized in Virginia Code section 18.2-257, and completed offenses are criminalized in Nelson's predicate offense statute, section 18.2-258.  Consequently, we are constrained to reject Nelson's *Campbell* theory and conclude that his prior Virginia conviction is a proper predicate for the challenged career offender enhancement.

C.

That brings us to Nelson's prior federal conviction, which is a 2012 conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(C) for the distribution of crack cocaine.[5] Emphasizing that § 841(b)(1)(C) allows proof of any "controlled substance in schedule I or II," Nelson contends that this is not a proper predicate for the career offender enhancement because schedules I and II included at least two substances at the time of the prior conviction — the cocaine derivative ioflupane and hemp-type marijuana — that were legal by the time of the present sentencing in 2022.  In other words, Nelson maintains that the offense of conviction "is overbroad by substance."  *See* Br. of Appellant 9.  Nelson thereby raises a number of complex issues concerning, e.g., the respective roles of § 841(a)(1) and § 841(b)(1)(C) in the "controlled substance offense" analysis and their divisibility by drug type.  A simpler question is whether Nelson properly eschews a time-of-conviction approach (turning solely on the drug schedules at the time of his 2012 conviction) in favor of a time-of-sentencing approach (asking whether each and every

---

[5] Nelson's challenge in the district court to the use of the prior federal conviction to designate him a career offender included a *Campbell*-based argument that he acknowledges *Groves* forecloses.

9

substance that could have supported his 2012 conviction was in schedule I or II at the time of his present sentencing).

Nelson originally relied for his time-of-sentencing approach on our decision in *United States v. Hope*, 28 F.4th 487 (4th Cir. 2022). There, the issue was whether the defendant's three prior South Carolina convictions for possession of marijuana were for a "serious drug offense" subjecting him to a mandatory minimum 15-year sentence under the Armed Career Criminal Act (the "ACCA") on his present 18 U.S.C. § 922(g) conviction. *See* 18 U.S.C. § 924(e)(1). Thus, we were required to consider whether the South Carolina marijuana offense categorically satisfied the ACCA definition of a "serious drug offense" as a state offense involving, inter alia, "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." *See id.* § 924(e)(2)(A)(ii). Pertinent to Nelson, *Hope* rejected the government's argument "that the status of a prior state conviction under the ACCA is determined by the federal law that applied at the time of that state conviction, not the time of federal sentencing." *See* 28 F.4th at 504-05 (alterations and internal quotation marks omitted). We instead compared the definition of "marijuana" under federal law at the time of Hope's present federal sentencing with the definition of "marijuana" under South Carolina law at the time of his prior state sentencing. *Id.* And because hemp was excluded from the federal definition at the time of the present federal sentencing and included in the South Carolina definition at the time of the prior state sentencing, we concluded there was no categorical match. *Id.* at 505-07.

As Nelson has acknowledged, following the briefing in this appeal, the pertinent aspect of our *Hope* decision was abrogated by the Supreme Court's decision in *Brown v.*

10

*United States*, 602 U.S. 101 (2024). That is, the *Brown* Court held "that a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." *See* 602 U.S. at 123. Nevertheless, Nelson asserts that *Brown* helps him, by way of the following footnote explaining the Court's rejection of Brown's interpretation of the ACCA as requiring the state and federal definitions to match at the time of the present federal sentencing:

> Brown also likens his interpretation to the "ordinary practice" of applying Guidelines sentencing enhancements as they exist at sentencing. But there is reason to doubt that the Guidelines practice is relevant here. That is because Congress has expressly directed courts to apply the Guidelines "in effect on the date the defendant is sentenced." ACCA contains no similar instruction.

*Id.* at 120 n.7 (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)).

According to Nelson, the *Brown* footnote indicates that in cases like his, involving the Sentencing Guidelines, the time-of-sentencing approach is the proper one. And notably, there is support for Nelson's view. *See, e.g.*, *United States v. Minor*, 121 F.4th 1085, 1092 (5th Cir. 2024) (adopting the time-of-sentencing approach for a Guidelines career offender analysis and observing that "the Court in *Brown* cast doubt on whether it would employ the [time-of-conviction] approach in the Guidelines context"). On the other hand, there is also authority for the view that the time-of-conviction approach was appropriate in the Guidelines context before *Brown* and remains so now. *See, e.g.*, *United States v. Drake*, 126 F.4th 1242, 1245-46 (6th Cir. 2025) (adhering to the time-of-conviction approach adopted in *United States v. Clark*, 46 F.4th 404 (6th Cir. 2022), and explaining that "[n]othing in *Brown*'s footnote undermines [*Clark*'s] reasoning").

11

We do not read the *Brown* footnote to mandate the time-of-sentencing approach in the Guidelines context, leaving us free to decide between that approach and the time-of-conviction approach. We also recognize that such determination was long ago made by our court. In our 1997 decision in *United States v. Johnson*, we adopted the time-of-conviction approach not only in the Guidelines context, but specifically for a Guidelines career offender analysis. *See* 114 F.3d 435, 445 (4th Cir. 1997) (rejecting the defendant's theory "that the nature of the [prior] conviction at the time of [the present] sentencing, rather than at the time of conviction, controls the career offender analysis").

Rather than the removal of substances from the drug schedules, *Johnson* involved a reduction in maximum sentence converting a predicate state offense from a qualifying felony at the time of the prior conviction to a non-felony at the time of the present sentencing. But *Johnson*'s reasoning promotes a generally applicable time-of-conviction approach. For example, *Johnson* underscored the Guidelines language directing the court's attention to events that occurred in the past. *See* 114 F.3d at 445 (emphasizing that the career offender enhancement is based on "*prior felony conviction*[*s*]," with the date of conviction being determined by "*the date the guilt of the defendant is established*"); *see also Clark*, 46 F.4th at 409 (concluding that "the Guidelines language indicates that the court should take a backward-looking approach and assess the nature of the predicate offenses at the time the convictions for those offenses occurred"); *cf. Brown*, 602 U.S. at 111 (highlighting that, "through a 'backward-looking' examination," the ACCA "gauges what a defendant's 'history of criminal activity' says about his or her 'culpability and dangerousness'" (quoting *McNeill v. United States*, 563 U.S. 816, 820, 823 (2011))).

12

Furthermore, *Johnson* observed that "[f]rom a practical standpoint, acceptance of [the time-of-sentencing approach] would interject uncertainty into the sentencing process because district courts would be required to check each prior felony conviction to see whether at the time of sentencing as a career offender, the prior conviction would still classify as a felony." *See* 114 F.3d at 445. Of course, the same can easily be said of a requirement for courts to check the drug schedules for substances removed between the time of the prior conviction and the time of the present sentencing.

At bottom, there being no contrary directive from the Supreme Court and no other basis to do otherwise, we adhere to *Johnson* and conclude that the time-of-conviction approach applies to Nelson's career offender analysis. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (recognizing "the basic rule that one panel cannot overrule another," as well as the principle that a panel decision controls until overruled by "this court sitting *en banc* or the Supreme Court"). Accordingly, we must reject Nelson's contention that his prior § 841(a)(1) and (b)(1)(C) offense is overbroad by substance and conclude that such federal conviction is a proper predicate for the challenged career offender enhancement.

## II.

Pursuant to the foregoing, we reject Nelson's challenge to his designation as a career offender and therefore affirm his sentence and the judgment of the district court.

*AFFIRMED*

13